# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2021AP1395

†Petition for Review filed

Complete Title of Case:

**THOMAS FOTUSKY,**

**PLAINTIFF-RESPONDENT,†**

**V.**

**PROHEALTH CARE, INC.,**

**DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | March 15, 2023 |
| Submitted on Briefs: | May 31, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Grogan, JJ. |
| Concurred: | Neubauer, J. |
| Dissented: | |

Appellant
ATTORNEYS:      On behalf of the defendant-appellant, the cause was submitted on the briefs of *Terry E. Johnson* and *Kevin M. Fetherston* of *von Briesen & Roper, s.c.*, Milwaukee.

Respondent
ATTORNEYS:      On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert C. Welcenbach* of *Welcenbach Law Offices, S.C.*, Milwaukee, *Scott Borison* of *Legg Law Firm LLC*, Baltimore, Maryland, and *John Craig Jones* of *Jones & Hill Trial Lawyers*, South Oakdale, Louisiana.

# COURT OF APPEALS
## DECISION
## DATED AND FILED

### March 15, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1395**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2018CV1829**

**IN COURT OF APPEALS**

---

THOMAS FOTUSKY,

    PLAINTIFF-RESPONDENT,

  V.

PROHEALTH CARE, INC.,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Waukesha County: LLOYD CARTER, Judge. *Reversed and cause remanded for further proceedings*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1    GROGAN, J. ProHealth Care, Inc. (ProHealth) appeals from a circuit court order certifying a class action lawsuit related to ProHealth's alleged

violations of WIS. STAT. § 146.83(3f)(b) (2017-18).[1]  On appeal, ProHealth asserts the circuit court erred, not in certifying a class, but rather in certifying *this specific class* because this class, it says, is overly broad and fails to meet the prerequisites of Wisconsin's class action statute, WIS. STAT. § 803.08.  Because we conclude Thomas Fotusky cannot, as a matter of law, establish damages pursuant to WIS. STAT. § 146.84 for ProHealth's purported violations of § 146.83(3f)(b) from December 1, 2015, through May 3, 2017—the time period when the court of appeals' decision in *Moya v. Aurora Healthcare, Inc.*[2] was binding law—the circuit court erred in certifying a class that included certain individuals charged during that time period.  Accordingly, the circuit court erred in certifying *this* class, and we therefore reverse and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

¶2      Fotusky hired Welcenbach Law Offices, S.C. to represent him in regard to a personal injury he sustained in January 2017.  During the course of that representation, Fotusky signed a HIPAA[3] form authorizing his attorneys to request copies of his medical records.  Fotusky's attorneys thereafter provided ProHealth with the HIPAA authorization and requested Fotusky's medical records on or about February 23, 2017, and again on or about May 11, 2017.  ProHealth charged the

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] *Moya v. Aurora Healthcare, Inc.*, 2016 WI App 5, 366 Wis. 2d 541, 874 N.W.2d 336 (2015), *rev'd*, 2017 WI 45, 375 Wis. 2d 38, 894 N.W.2d 405.

[3] "HIPAA" stands for Health Insurance Portability and Accountability Act.  A HIPAA release form provides a method for a patient to grant consent to release of the patient's medical records.  *Harwood v. Wheaton Franciscan Servs., Inc.*, 2019 WI App 53, ¶7 n.5, 388 Wis. 2d 546, 933 N.W.2d 654.

attorneys $33.86 and $33.28 for each request, respectively, both of which included certain certification and retrieval fees. Fotusky's attorneys paid the charges, and Fotusky thereafter reimbursed his attorneys for those costs.

¶3     On January 30, 2018, Fotusky filed a Summons and Complaint in Milwaukee County Circuit Court case No. 2018CV832 alleging that ProHealth,[4] in charging his attorneys certification and retrieval fees in response to the February and May 2017 requests, had violated WIS. STAT. § 146.83, which allows for certain certification and retrieval fees only when "the requester is *not* the patient *or a person authorized by the patient*[.]" Sec. 146.83(3f)(b)4-5 (emphasis added). Specifically, Fotusky claimed that:  (1) in charging his attorneys despite Fotusky's written authorization, ProHealth either negligently or knowingly and willfully violated § 146.83(3f)(b); (2) Fotusky and the proposed class members had incurred actual damages stemming from these violations; and (3) Fotusky and the proposed class members were entitled to recover their actual damages, exemplary damages for each violation, and costs and reasonable attorney fees. Fotusky also asserted a claim for unjust enrichment and sought "the return of all monies, profit, interest and pre-judgment interest on all sums illegally collected[.]"

¶4     Prior to filing its Answer, ProHealth successfully sought to transfer venue to the Waukesha County Circuit Court and filed a Motion to Dismiss,[5] which the circuit court ultimately treated as a motion for summary judgment. The circuit court denied the Motion, ProHealth filed its Answer, and in January 2021, Fotusky

---

[4] Fotusky initially named Ebix, Inc. as a co-defendant in this matter as well. However, Ebix and Fotusky ultimately settled, and the circuit court approved the class settlement between those parties. Ebix is therefore no longer a party to this action.

[5] ProHealth initially filed a Motion to Dismiss prior to the venue transfer. However, it withdrew that motion after the venue transfer and thereafter filed an amended Motion to Dismiss in the Waukesha County Circuit Court.

filed a motion seeking class certification. In support of his Motion, Fotusky asserted that class certification was appropriate for numerous reasons, including that: (1) numerous Wisconsin courts had previously certified classes based on the same claims Fotusky raised; (2) the matter satisfied WIS. STAT. § 803.08(1)'s prerequisites of numerosity, commonality, typicality, and adequacy, as Fotusky and his counsel would adequately represent and protect the interests of the proposed class members; and (3) the proposed class met § 803.08(2)(c)'s predominance and superiority requirements.

¶5    ProHealth raised numerous arguments opposing class certification. It focused largely on its position that the proposed class was overly broad for multiple reasons as well as its position that the proposed class failed to protect both the class members' and ProHealth's rights in regard to WIS. STAT. § 146.84's mens rea requirements (i.e., whether any purported violations of WIS. STAT. § 146.83(3f)(b) had been either negligent or knowing and willful).

¶6    As to its argument that the proposed class was overly broad, ProHealth first argued it "include[d] not only patients who requested records through their attorneys, but [also] patients who requested their own records[,]" which it asserted could lead a jury to "find different culpability" regarding each group (direct patient requests versus patient-authorized attorney requests). ProHealth also argued a jury could reach differing conclusions as to ProHealth's culpability based on *when* it charged the proposed class members because *Moya v. Aurora Healthcare, Inc.*, 2016 WI App 5, 366 Wis. 2d 541, 874 N.W.2d 336 (2015), *rev'd*, 2017 WI 45, 375 Wis. 2d 38, 894 N.W.2d 405 (*Moya I*), and *Moya v. Aurora Healthcare, Inc.*, 2017 WI 45, 375 Wis. 2d 38, 894 N.W.2d 405 (*Moya II*), which reached opposing conclusions in interpreting WIS. STAT. § 146.83(3f), were both in effect during the six-year time period identified in

4

Fotusky's claim and thus impacted the status of the law during the relevant time period. Next, ProHealth asserted the proposed class was overly broad because it included class members who did not actually *pay* the charged fees as well as those whose claims it asserted were barred by a two-year statute of limitations.[6] ProHealth also argued the proposed class was overly broad because it was unclear how many proposed class members had been included in previously litigated class action lawsuits involving the same claims.[7]

¶7    In addition to arguing that these purported deficiencies rendered the proposed class overly broad, ProHealth also asserted that these deficiencies prevented Fotusky from satisfying WIS. STAT. § 803.08(1) and (2)(c)'s requirements of commonality, predominance, typicality, and adequacy. Finally, ProHealth

---

[6] In *Hammetter v. Verisma Systems, Inc.*, 2021 WI App 53, 399 Wis. 2d 211, 963 N.W.2d 874, we rejected the argument that WIS. STAT. § 893.93(2)(a)'s two-year statute of limitations applied to WIS. STAT. § 146.84 and instead determined that a six-year statute of limitations applied. *Hammetter*, 399 Wis. 2d 211, ¶¶35, 38. ProHealth has not pursued this argument on appeal, stating instead that while it "believes that the statute of limitations applicable to the statutory claims is 2-years pursuant to WIS. STAT. § 893.93(2)(a)[,]" it "intends to raise that defense in the event the Wisconsin Supreme Court decides the issue in the *Rave* [*v. Ciox Health LLC*, No. 18-CV-305 (E.D. Wis. dismissed June 22, 2020)] or *Hammetter* cases." Because ProHealth has not pursued the statute of limitations argument on appeal, we will not address it further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed."). We further note that the Wisconsin Supreme Court denied the petition for review filed in the *Hammetter* matter in an order dated April 13, 2022, and that the *Rave* matter does not appear to be pending in the Wisconsin state court system as that matter was filed in the Eastern District of Wisconsin.

[7] ProHealth specifically pointed to *Moya v. Healthport Technologies LLC*, Milwaukee County Circuit Court case No. 2013CV2642, and *Rave v. Ciox Health LLC* because Ciox Health LLC, a party in each of those cases, had "served as ProHealth's records vendor for a portion of the time period for the proposed class[.]" ProHealth asserted that it would be "inappropriate to certify" the proposed class "[w]ithout any information regarding the impact of [those] settlements on the class in this case[.]"

challenged the propriety of addressing Fotusky's unjust enrichment claim via a class action proceeding.

¶8 The circuit court held a hearing on Fotusky's Class Certification Motion in May 2021, and it issued an oral ruling granting the certification in July 2021. In granting the class certification, the circuit court noted and discussed each of the prerequisites set forth in WIS. STAT. § 803.08(1)(a)-(d) (numerosity, commonality, typicality, and adequacy) as well as in § 803.08(2)(c) (predominance and superiority). In the course of its oral ruling, the court also rejected ProHealth's assertion that it was necessary to have three separate classes based on the pre-*Moya I* (prior to December 1, 2015), *Moya I* (December 1, 2015, through May 3, 2017), and *Moya II* (May 4, 2017, and after) timeframes, as well as ProHealth's argument that the class should be limited to those who had actually paid the charged fees as opposed to those who had simply been charged.[8]

¶9 On July 30, 2021, the circuit court entered a written order memorializing its oral ruling as required by WIS. STAT. § 803.08(11)(a).[9] Specifically, the order reiterated that Fotusky had met "the requirements of WIS. STAT. § 803.08(1)(a)-(d) and (2)(c)" and noted that:

- "The potential class size is in the hundreds making joinder impractical (numerosity)";

---

[8] The circuit court cited to *Cruz v. All Saints Healthcare System, Inc.*, 2001 WI App 67, 242 Wis. 2d 432, 625 N.W.2d 344, as providing authority to broadly include those who were charged, as opposed to only those who had paid the charges.

[9] As relevant, WIS. STAT. § 803.08(11)(a) provides that "[i]f the court finds that the action should be maintained as a class action, it shall certify the action accordingly on the basis of a written decision setting forth all reasons why the action may be maintained and describing all evidence in support of the determination."

- "[T]here is a common question of fact and law as to the legality of the Defendant's charges for certain fees for copies of health care records (commonality)";

- Fotusky's claim "is typical of the claims asserted because it is based on the same facts and law (typicality); and"

- Fotusky's interests were not "antagonistic to the class," and "his counsel are adequate based on their experience and knowledge in class proceedings and the specific claims asserted in this action … (adequacy)."

The court further reiterated that:

- "[T]he common legal and factual issue identified is also the predominant issue for this action under WIS. STAT. § 893.08(2)(c)[,]" and the claims "are dependent on prevailing on the common legal and factual issue" (predominance); and

- "[A] class is superior under WIS. STAT. § 803.08(2)(c)" when "[r]epetitive individual actions based on the small amount of fees collected … make[] a class proceeding the most efficient method to address the claims[,]" there is no indication any other purported class member had filed litigation asserting these claims, class members can opt out, the court is "a proper forum for these claims," and "[t]he class is manageable[.]"

The written order defined the certified class as follows:

> Any patient or person authorized in writing who Prohealth directly, or indirectly through an agent other than Ebix, Inc., charged a basic, retrieval or certification fee to obtain their healthcare records when the records were requested by the patient or by a person authorized by the patient in the six-year period preceding the filing of the Plaintiff's complaint.
>
> The Class specifically excludes the following persons or entities: (i) Defendant, any predecessor, subsidiary, sister and/or merged companies, and all of the present or past directors, officers, employees, principals, shareholders and/or agents of the Defendant; (ii) any and all Federal, State, County and/or Local Governments, including, but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or any other

7

subdivision, and any claim that such governmental entities may have, directly or indirectly; (iii) any currently-sitting Wisconsin state court Judge or Justice, or any federal court Judge currently or previously sitting in Wisconsin, and the current spouse and all other persons within the third degree of consanguinity to such judge/justice or (iv) any law firm of record in these proceedings, including any attorney of record in these proceedings; and (vi) anyone who has recovered the fee at issue as member of any class in *Moya v. HealthPort Technologies, LLC*, 13CV2642 (Milwaukee Co. Cir. Ct.) (the "Moya Action") or *Rave v. Ciox Health LLC*, 2:18-CV-00305-LA (E.D. WI.).

¶10    ProHealth subsequently filed this interlocutory appeal pursuant to WIS. STAT. § 803.08(11)(b) asserting that the circuit court erroneously exercised its discretion in certifying the defined class for numerous reasons, including that the class "is overbroad and will not adequately protect class members or ProHealth's due process rights" and that "[t]he circuit court … ignored the *mens rea* requirements" identified in WIS. STAT. § 146.84 as it relates to the issues of culpability and exemplary damages for violations of WIS. STAT. § 146.83(3f). Notably, ProHealth does not suggest that class certification, generally speaking, is inappropriate, but rather asserts that the circuit court erred in granting certification for the class as defined in the circuit court's order.  For the reasons that follow, we conclude that the circuit court erroneously exercised its discretion when it certified the class identified above.

## II.  DISCUSSION

¶11    In December 2017, our supreme court repealed and recreated WIS. STAT. § 803.08 "with the stated purpose of aligning the statute with the federal class action Federal Rules of Civil Procedure Rule 23."  *Harwood v. Wheaton Franciscan Servs., Inc.*, 2019 WI App 53, ¶4 n.4, 388 Wis. 2d 546, 933 N.W.2d

654.[10]  Section 803.08(1) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if the court finds all of the following" prerequisites are present:

> (a)  The class is so numerous that joinder of all members is impracticable.
>
> (b)  There are questions of law or fact common to the class.
>
> (c)  The claims or defenses of the representative parties are typical of the claims or defenses of the class.
>
> (d)  The representative parties will fairly and adequately protect the interests of the class.

The first three prerequisites—generally referred to as numerosity, commonality, and typicality, respectively—require that the plaintiff establish specific "facts about the proposed class and the representative[.]" *Harwood*, 388 Wis. 2d 546, ¶23.  The fourth prerequisite—adequacy—addresses "the plaintiff's ability to represent the class." *Id.*  "The party seeking class certification bears the burden of showing, by a preponderance of the evidence, that a proposed class meets the requirements of [the class certification statute]." *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016).[11]

¶12    If a circuit court concludes a plaintiff has established all four prerequisites, the court must then look to WIS. STAT. § 803.08(2) to determine the type of class action.  Here, Fotusky relied upon § 803.08(2)(c), which requires that the circuit court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

---

[10]  The revision went into effect in July 2018, and the legislature further revised the statute via 2017 Wis. Act 235.  *See Harwood*, 388 Wis. 2d 546, ¶4 n.4.

[11]  When the supreme court revised WIS. STAT. § 803.08, it instructed Wisconsin's courts to seek guidance from federal case law as it relates to class certification issues.  *Harwood*, 388 Wis. 2d 546, ¶5.

action is superior to other available methods for fairly and efficiently adjudicating the controversy." We refer to these "as the predominanc[e] and superiority requirements." *Harwood*, 388 Wis. 2d 546, ¶24. "The matters pertinent to these findings [of predominance and superiority] include":

> 1. The class members' interests in individually controlling the prosecution or defense of separate actions.
>
> 2. The extent and nature of any litigation concerning the controversy already begun by or against class members.
>
> 3. The desirability or undesirability of concentrating the litigation of the claims in the particular forum.
>
> 4. The likely difficulties in managing a class action.

Sec. 803.08(2)(c)1-4.

¶13 Circuit courts determining whether to grant or deny a motion seeking class certification are afforded broad discretion. *Harwood*, 388 Wis. 2d 546, ¶41. A circuit court "exercises its discretion when it considers the facts of record and reasons its way to a rational, legally sound conclusion." *Id*. We will affirm the circuit court's decision if the court "applied the correct law to the facts of record and reached a reasonable decision." *Id.* Only where the circuit court erroneously exercised its discretion will we reverse the circuit court's certification decision. *Hammetter v. Verisma Sys., Inc.*, 2021 WI App 53, ¶9, 399 Wis. 2d 211, 963 N.W.2d 874.

### A. WISCONSIN STAT. § 146.83(3f)(b) and Prior Class Action Lawsuits

¶14 Prior to determining whether the circuit court erred in certifying the class in question here, we begin by first reviewing a series of recent court of appeals and supreme court opinions that have interpreted WIS. STAT. § 146.83(3f) and

10

considered that statute in the context of class action proceedings. Section 146.83(3f)(b) provides that:

> (b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):
>
> 1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.
>
> 2. For microfiche or microfilm copies, $1.50 per page.
>
> 3. For a print of an X-ray, $10 per image.
>
> 4. *If the requester is not the patient or a person authorized by the patient*, for certification of copies, a single $8 charge.
>
> 5. *If the requester is not the patient or a person authorized by the patient*, a single retrieval fee of $20 for all copies requested.
>
> 6. Actual shipping costs and any applicable taxes.

(Emphases added.) Section 146.83(3f)(a) further states that aside from certain exceptions, when "a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fess under par. (b), the health care provider shall provide the person making the request copies of the requested records." WISCONSIN STAT. § 146.81(5) defines a "'[p]erson authorized by the patient'" to include "any person authorized in writing by the patient[.]" If a person or entity violates § 146.83, such as by charging certification and retrieval fees that are not statutorily authorized "in a manner that is knowing and willful" or "negligent[]," that person or entity is subject to certain penalties. WIS. STAT. § 146.84(1)(b), (bm).

11

¶15     The meaning of WIS. STAT. § 146.81(5)'s reference to "any person authorized in writing by the patient" within the context of WIS. STAT. § 146.83(3f) was at the heart of the dispute in *Moya I*.  There, this court determined that "a person authorized by the patient," as used in § 146.83(3f)(b)4-5, did *not* include an attorney who was charged certification and retrieval fees, even though the attorney had been authorized in writing to obtain the client's medical records.   *Moya I*, 366 Wis. 2d 541, ¶1.  In *Moya I*, Carolyn Moya retained Welcenbach Law Offices, S.C. regarding a personal injury matter.  *Id.*, ¶2.  Moya signed HIPAA forms authorizing the law firm to obtain copies of medical records related to the personal injury claim, and upon her attorney's request for the records, HealthPort Technologies, LLC (HealthPort) charged the attorney an $8 retrieval fee and a $20 certification fee.  *Id.*  The law firm paid the fees, and Moya thereafter filed a class action lawsuit asserting HealthPort had violated § 146.83(3f)(b)4-5 when it charged the fees to her attorney because he had Moya's written authorization to obtain her medical records and therefore qualified as "a 'person authorized by the patient'" for the purposes of § 146.83(3f). *Moya I*, 366 Wis. 2d 541, ¶¶2-3.

¶16     The circuit court agreed with Moya; however, we reversed in a split decision.  *Id.*, ¶¶1, 3.  We said that a "'person authorized by the patient'" means "a person who has been authorized to consent to the release of a patient's health care records in place of the patient[,]" as opposed to an individual like Moya's attorney who "only ha[d] a HIPAA release from [his] client" authorizing the attorney to obtain copies of her medical records.  *Id.*, ¶13.  We therefore instructed the circuit court to grant HealthPort's motion for summary judgment on remand.  *Id.*, ¶16.

¶17     The Wisconsin Supreme Court disagreed with our interpretation, determining that "a person authorized by the patient," as used in WIS. STAT. § 146.83(3f)(b)4-5, unambiguously included Moya's attorney because WIS. STAT.

§ 146.81(5) defines the phrase "'person authorized by the patient'" "to include 'any person authorized in writing by the patient[.]'" *Moya II*, 375 Wis. 2d 38, ¶2 (quoting § 146.81(5)). Accordingly, the supreme court concluded that HealthPort violated § 146.83(3f)(b)4-5 when it charged Moya's attorney the certification and retrieval fees because Moya had provided written authorization for her attorney to obtain copies of her medical records. *Moya II*, 375 Wis. 2d 38, ¶38.[12]

¶18　　Numerous opinions addressing class action lawsuits involving WIS. STAT. § 146.83(3f) followed the supreme court's *Moya II* decision. In August 2019, this court issued its opinion in *Harwood*, 388 Wis. 2d 546, in which we considered whether the circuit court erred in certifying a class based on alleged violations of § 146.83(3f)(b)4-5. In *Harwood*, the plaintiff sought certification of a class that included both patients and individuals a patient had authorized in writing "who were charged retrieval fees or certification fees" for copies of medical records in "the six years preceding the filing of the complaint." *Harwood*, 388 Wis. 2d 546, ¶1. Among those excluded from the proposed class were "any persons who did not pay the fees." *Id*. After applying WIS. STAT. § 803.08, the circuit court "concluded that Harwood had satisfied the requirements" and therefore certified the class. *Harwood*, 388 Wis. 2d 546, ¶¶1-4.

¶19　　We affirmed the circuit court on appeal, concluding that the circuit court had not erroneously exercised its discretion in certifying the class. *Id.*, ¶66. Specifically, we noted that the circuit court had asked detailed questions about the facts at issue, considered the relevant facts related to the WIS. STAT. § 803.08 prerequisites, and properly applied the statute to those facts in concluding that class

---

[12] The supreme court also concluded that neither the doctrine of voluntary payment nor the waiver doctrine applied. *Moya v. Aurora Healthcare, Inc.*, 2017 WI 45, ¶¶34, 37, 375 Wis. 2d 38, 894 N.W.2d 405.

certification was appropriate. *Harwood*, 388 Wis. 2d 546, ¶¶51, 57. In doing so, we determined, inter alia, that a proposed class with forty-two class members was sufficient to satisfy the numerosity requirement. *Id.*, ¶¶55-58. We also concluded that the certified class was consistent with *Moya II*'s conclusion that attorneys who had obtained written authorization from a patient were not subject to the fees and charges at issue. *Harwood*, 388 Wis. 2d 546, ¶53.

¶20 Two years later, we again affirmed a circuit court's exercise of discretion in granting class certification in *Hammetter*, 399 Wis. 2d 211, ¶¶1-2, which likewise involved allegations that a health care system had violated WIS. STAT. § 146.83(3f)(b)4-5. There, Derrick J. Hammetter and Antoinette M. Vinkavich had each retained attorneys to represent them in personal injury matters and had signed written authorizations allowing their attorneys to obtain their respective medical records. *Hammetter*, 399 Wis. 2d 211, ¶2. The attorneys were charged certification and retrieval fees, which they paid, and Hammetter and Vinkavich ultimately reimbursed the attorneys. *Id.*

¶21 After the supreme court reversed our *Moya I* decision, Hammetter and Vinkavich filed a class action lawsuit alleging Verisma and Froedert (collectively, "Verisma") had violated WIS. STAT. § 146.83(3f).[13] *Hammetter*, 399 Wis. 2d 211, ¶5. The circuit court granted the class certification and defined the class as including: (1) persons or entities who had requested their own health records, had authorized another in writing to obtain the records, or had received a patient's written authorization to obtain the records; (2) individuals in those categories who Verisma had charged "either directly or indirectly, a certification and/or retrieval

---

[13] The suit also asserted claims for unjust enrichment and conversion and sought both compensatory and punitive damages. *Hammetter*, 399 Wis. 2d 211, ¶5.

fee at any time" during the specified time period; and (3) those who had "[i]ncurred and ultimately paid the certification and/or retrieval charges." *Id.*, ¶6.

¶22    On appeal, Verisma argued the circuit court had erroneously exercised its discretion. *Id.*, ¶1. More specifically, Verisma argued that its "mental state may have differed depending on whether" it had charged the fees before *Moya I*, after *Moya I* but before *Moya II*, or after *Moya II*, as well as whether the requestor had sought his own medical records or if someone sought records on the patient's behalf. *Hammetter*, 399 Wis. 2d 211 ¶12. Verisma, however, failed to provide any evidence suggesting its mental state may have varied depending "on when the records were requested or the nature of the person who made the request[,]" and we therefore rejected Verisma's argument, stating that "[s]peculation related to issues to be addressed later in the 'merits' phase of a class-action lawsuit" was insufficient to defeat class certification. *Id.*, ¶13.

¶23    Verisma also asserted that the proposed class was overbroad because the requirement that class members had "'incurred and ultimately paid the certification and/or retrieval charges'" allowed "'not only [the] patient[] but also the person authorized to request medical records, i.e., the requester'" to fall within the definition of class members. *Id.*, ¶14 (alterations in original). We likewise rejected this argument, stating that the "requirement that a class member will have to have actually '[i]ncurred and *ultimately paid* the certification and/or retrieval charges'" "appropriately addressed any overbreadth concern" because a person who did not pay the fee would "not be a member of the class" or have suffered any damage. *Id.*, ¶15 (alteration in original). We further explained that the "'ultimately paid'" requirement appeared to "carefully and appropriately … weed out persons or entities, like [an attorney], that may have simply 'fronted' the money but did not ultimately pay the debt." *Id*.

¶24     We similarly rejected Verisma's argument that the plaintiffs' claims did not satisfy the typicality requirement because their claims "would only relate to Verisma's pre-*Moya I* state of mind and thus would not be typical of claims of class members who were charged in either of the other two time periods." *Hammetter*, 399 Wis. 2d 211, ¶19.  We explained, however, that "[t]he question on typicality … is not whether the [plaintiffs'] claims … are identical in every way with every potential class member but whether their claims are typical" and noted that Verisma had failed to point to evidence suggesting it had different mental states based on when the records had been requested and by whom. *Id.*, ¶20.  We also noted that WIS. STAT. § 803.08(7) allowed the circuit court to determine whether subclasses might be appropriate at a later point. *Hammetter*, 399 Wis. 2d 211, ¶20.  In rejecting these arguments as well as others Verisma asserted against class certification, we stated that "[q]uestions ultimately related to potential subclasses or what verdicts should be utilized at the end of a trial [were] premature and more appropriately addressed by the circuit court following discovery on the merits." *Id.*, ¶34.

¶25     Just a few months later, we determined in an unpublished opinion, *Schuler v. Schubbe Family Chiropractic, Ltd.*, No. 2020AP1753, unpublished slip op. (WI App Dec. 22, 2021), that there could be no "negligent, willful, or knowing violation" of WIS. STAT. § 146.83(3f)(b)4-5 during the time period after we issued our opinion in *Moya I* but before our supreme court reversed that decision in *Moya II*. *Schuler*, No. 2020AP1753, ¶9.[14]

---

[14] Although *Schuler v. Schubbe Family Chiropractic, Ltd.*, No. 2020AP1753, unpublished slip op. (WI App Dec. 22, 2021), is an unpublished opinion and therefore not precedential, we may cite it for its persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b) (2019-20).

We further note that in an order dated March 16, 2022, the Wisconsin Supreme Court denied Schuler's petition for review in that matter.

¶26 In *Schuler*, Schubbe, the chiropractic office, charged Schuler's attorneys retrieval fees on March 21, 2017, when the attorneys, who had obtained a written HIPAA authorization form from Schuler, requested Schuler's health care records pursuant to WIS. STAT. § 146.83. *Schuler*, No. 2020AP1753, ¶1. The attorneys paid the fees, and Schuler thereafter filed a lawsuit alleging, inter alia, violations of § 146.83, unjust enrichment, and conversion. *Schuler*, No. 2020AP1753, ¶¶2, 4. Schubbe, referencing *Moya I*, sought dismissal on the grounds "that at the time it charged the retrieval and certification fees, 'Wisconsin law expressly and unambiguously permitted it to do so.'" *Schuler*, No. 2020AP1753, ¶4. Schuler, in response, argued that *Moya I* had been "'a non-final and non-binding Court of Appeals decision.'" *Schuler*, No. 2020AP1753, ¶4. The circuit court agreed with Schubbe, and Schuler appealed. *Id.*

¶27 The specific question we addressed in *Schuler* was "whether Schuler ha[d] alleged facts that, if true, show a violation of WIS. STAT. § 146.83(3f)(b)4.-5., thereby entitling Schuler to damages under the provisions of WIS. STAT. § 146.84." *Schuler*, No. 2020AP1753, ¶5. We explained that to prevail, Schuler "must show that Schubbe 'negligently' or 'knowing[ly] and willful[ly]' violated the law." *Id.* (alterations in original). We concluded that he could not do so because at the time "Schubbe charged Schuler the certification charges and retrieval fees, the law in effect (*Moya I*) was that Schuler's attorney was not exempt from the charges set forth in WIS. STAT. § 146.83(3f)(b)4.-5." *Schuler*, No. 2020AP1753, ¶6. We explained that despite Schuler's argument to the contrary, *Moya I* was binding law during the relevant time period because "[p]ursuant to WIS. STAT. § 752.41(2), '[o]fficially published opinions of the court of appeals shall have statewide precedential effect.'" *Schuler*, No. 2020AP1753, ¶6 (second alteration in original). We further noted that "[o]ur common law is in accord with our statutory law: 'When

17

the court of appeals construes a statute in a published opinion, that opinion binds every agency and every court until it is reversed or modified.'" *Id.* (quoting *State ex rel. Dicks v. Employe Tr. Funds Bd.*, 202 Wis. 2d 703, 709, 551 N.W.2d 845 (Ct. App. 1996)). Accordingly, we concluded that because *Moya I* was binding law when Schubbe charged Schuler's attorneys the certification charges and retrieval fees, the circuit court properly "dismissed the complaint because, *as a matter of law*, Schuler could not establish that Schubbe negligently, much less willfully or knowingly, violated the statute at the time[.]" *Schuler*, No. 2020AP1753, ¶¶6, 9 (emphasis added).

¶28 In concluding that Schuler could not recover as a matter of law, we also responded to his argument that *Moya I* had no retroactive precedential value after our supreme court decided *Moya II*. In doing so, we noted that regardless of whether there had been a violation of WIS. STAT. § 146.83(3f), "the issue [was] whether Schuler [could] establish entitlement to damages because Schubbe *negligently, willfully,* or *knowingly* violated the statute." *Schuler*, No. 2020AP1753, ¶8. Citing *State ex rel. Buswell v. Tomah Area School District*, 2007 WI 71, ¶46, 301 Wis. 2d 178, 732 N.W.2d 804, we explained that "whether *Moya II* applies retroactively or not is irrelevant as Schubbe could not have committed a negligent, willful, or knowing violation as its conduct was in accordance with the law at the time of its act." *Schuler*, No. 2020AP1753, ¶9.[15]

---

[15] In *State ex rel. Buswell v. Tomah Area School District*, 2007 WI 71, 301 Wis. 2d 178, 732 N.W.2d 804, the supreme court noted that there can be no knowing violation of the law where individuals had "complied with the law as it then existed," and such individuals could therefore not "be sanctioned for a violation based on an interpretation first announced today." *Id.*, ¶¶46-52.

### B. The Circuit Court Erred in Certifying this Specifically Defined Class.

¶29    With the relevant law governing class certifications and recent opinions addressing similar claims involving WIS. STAT. § 146.83(3f)(b) class action proceedings in mind, we turn now to ProHealth's assertion that the circuit court erred in certifying this specific class because it failed to properly account for potential differences in ProHealth's mens rea based on the status of the law when ProHealth charged the fees at issue and, relatedly, that the circuit court erred in certifying a single class encompassing the pre-*Moya I*, *Moya I*, and *Moya II* time periods as opposed to multiple classes or a single class with multiple subclasses.

¶30    Having reviewed the applicable law and the Record, we conclude that the circuit court erroneously exercised its discretion when it certified the class as defined because the certified class does not comply with the prerequisites set forth in WIS. STAT. § 803.08(1).    We reach this conclusion based on *Schuler*'s persuasiveness as it relates to the relevant charges ProHealth issued during the time period when *Moya I* was the law (December 1, 2015, through May 3, 2017).[16]

¶31    As noted above, in *Schuler*, we determined that Schuler ultimately could not prevail on his WIS. STAT. § 146.83(3f)(b)4-5 claim because he could not establish he was entitled to damages pursuant to WIS. STAT. § 146.84.  *Schuler*,

---

[16] To clarify, for purposes of this opinion, the group of people who must be excluded from a certified class because they were charged the fees at issue during the *Moya I* time period is limited to those who sought a patient's medical records with written authorization from the patient to do so as that was the specific group *Moya I* addressed.  Individuals who were charged such fees for requesting *their own* medical records during the time period *Moya I* was in effect are *not* excluded from inclusion in a certified class in this case.  This likewise applies within the context of Fotusky's unjust enrichment claim.

Additionally, to the extent Fotusky has suggested that *Moya I* did not become binding law after its issuance because the Wisconsin Supreme Court accepted the petition for review filed in that matter, Fotusky is incorrect for the reasons set forth in *Schuler*, No. 2020AP1753, ¶6, and we do not entertain any such argument further.

No. 2020AP1753, ¶5. This was so, we explained, because at the time of the charges, the law in effect (*Moya I*) excluded Schuler's attorneys from § 146.83(3f)(b)4-5's fee exemptions. *Schuler*, No. 2020AP1753, ¶6. And because Schuler's attorneys were not exempt based on the law at the time, Schubbe could neither have negligently nor knowingly and willfully violated the law at the time it charged Schuler's attorneys. *Id.*

¶32    *Schuler*'s logic likewise applies here to those individuals included in the certified class who were charged certification and retrieval fees after seeking a patient's medical records with written authorization while *Moya I* was the law in effect. Consequently, because attorneys did not fall within WIS. STAT. § 146.83(3f)'s exceptions for certification and retrieval fees during that time period, such individuals cannot recover damages pursuant to WIS. STAT. § 146.84; therefore, the circuit court erred as a matter of law when it included such individuals in the certified class.[17]

¶33    That does not mean that class certification is ultimately inappropriate in this matter. What it does mean, however, is that it is necessary to remand this matter to the circuit court to reanalyze, with the *Moya I* individuals identified herein excluded from the circuit court's analysis, whether Fotusky has established class certification is appropriate under WIS. STAT. § 803.08(1) and (2). To that end, we make multiple observations as to points of consideration for the circuit court on remand.

---

[17] Because we conclude the circuit court erred by including individuals in the class who cannot, as a matter of law, be included as class members, we need not specifically analyze the circuit court's decision as to each of WIS. STAT. § 803.08(1) and (2)'s requirements because that analysis, as a whole, was based on the erroneous inclusion of the *Moya I* individuals identified herein. For that same reason, we do not need to specifically address each of ProHealth's arguments related to § 803.08's requirements.

¶34     First, it does not appear from the Record that ProHealth charged Fotusky—or anyone with authorization on his behalf—the certification and retrieval fees at issue during the pre-*Moya I* time period.  Thus, the circuit court should consider whether subclasses or separate classes are appropriate.  Second, should the circuit court conclude on remand that class certification is appropriate, it should also ensure that the class does not include class members who have already recovered damages in prior litigation addressing the same claims as those addressed here.  Finally, because it does not appear that the circuit court considered Fotusky's unjust enrichment claim in its initial class certification analysis, it is instructed to do so on remand.

### III.  CONCLUSION

¶35     In summary, for the reasons set forth herein, we reverse the circuit court's grant of class certification and remand to the circuit court for further consideration of Fotusky's Class Certification Motion consistent with this opinion.  Additionally, on remand, the circuit court is further instructed to exclude Fotusky's claims related to charges issued during the time period *Moya I* was in effect as he cannot establish he is entitled to damages pursuant to WIS. STAT. § 146.84 for the fees charged to his attorneys during that time period.

     *By the Court.*—Order reversed and cause remanded for further proceedings.

21

No.   2021AP1395(C)

¶36   NEUBAUER, J. (*concurring*).   As the Majority notes, ProHealth does not oppose certification of a class in this case, but rather only the specific class certified by the circuit court.   Majority, ¶1.   I agree with the Majority that the identified authorized individuals who were charged the fees while this court's decision in *Moya v. Aurora Healthcare, Inc.*, 2016 WI App 5, 366 Wis. 2d 541, 874 N.W.2d 336 (2015), *rev'd*, 2017 WI 45, 375 Wis. 2d 38, 894 N.W.2d 405,[1] was binding law cannot, as a matter of law, show that ProHealth negligently or knowingly and willfully violated WIS. STAT. § 146.83(3f)(b)4.-5.   Because those individuals do not have legally viable claims under that statute, they must be excluded from the class.

¶37   I part with the Majority, however, as to the legal significance of the error, and what it requires of the circuit court on remand.   The Majority, without explanation, concludes that, because the class definition should have excluded the *Moya I* individuals, the court must redo the entire class certification analysis under WIS. STAT. § 803.08(1) and (2).   Majority, ¶¶30, 33.   I disagree.   As explained below, that error can be rectified on remand by amending the certification order to exclude the *Moya I* individuals.   With that exclusion, the circuit court's certification

---

[1]  Like the Majority, I refer to our decision as *Moya I* and the Wisconsin Supreme Court's decision reversing *Moya I* as *Moya II*.

decision still withstands our deferential review[2] as it applies to the pre-***Moya I*** and post-***Moya II*** individuals remaining within the class definition.

¶38    The failure to exclude the ***Moya I*** individuals from the class definition means that the definition is overbroad—it includes individuals who cannot be members of the class.  The solution to this problem "can and often should be … refining the class definition rather than by flatly denying class certification on that basis." ***Messner v. Northshore Univ. HealthSystem***, 669 F.3d 802, 825 (7th Cir. 2012).  Wisconsin's class action statute gives the circuit court the tool for that job. *See* WIS. STAT. § 803.08(3)(c) ("An order that grants or denies class certification may be altered or amended before final judgment."); ***Hammetter v. Verisma Sys., Inc.***, 2021 WI App 53, ¶27, 399 Wis. 2d 211, 963 N.W.2d 874.  Here, the circuit court on remand must redress the error by amending the certification order to exclude the ***Moya I*** individuals from the class definition.

¶39    But the erroneous inclusion of the ***Moya I*** individuals does not render the circuit court's decision an erroneous exercise of discretion as it pertains to the remaining proposed class members.  Under that standard of review, we are to uphold the court's decision if it considered the facts of record, applied the correct law, and reached a reasonable decision. ***Harwood v. Wheaton Franciscan Servs., Inc.***, 2019 WI App 53, ¶41, 388 Wis. 2d 546, 933 N.W.2d 654.

¶40    At most, the circuit court's inclusion of the ***Moya I*** individuals could arguably affect only one of the prerequisites for class certification—numerosity.

---

[2] "Ultimately, the circuit court has 'broad discretion to determine whether certification of a class-action lawsuit is appropriate,' and we will only reverse the certification decision if the court erroneously exercised its discretion." ***Hammetter v. Verisma Sys., Inc.***, 2021 WI App 53, ¶9, 399 Wis. 2d 211, 963 N.W.2d 874 (quoting ***Harwood v. Wheaton Franciscan Servs., Inc.***, 2019 WI App 53, ¶¶5, 41, 388 Wis. 2d 546, 933 N.W.2d 654).

*See* WIS. STAT. § 803.08(1)(a). As the Majority recounts, the circuit court found that "[t]he potential class size is in the hundreds making joinder impractical." Majority, ¶9. As support for this finding, the court cited an affidavit submitted by Thomas Fotusky's counsel, along with two spreadsheets produced by ProHealth Care, Inc. According to counsel's affidavit, one of the spreadsheets lists 6,967 invoices which include charges that allegedly violate WIS. STAT. § 146.83(3f)(b). Based upon the dates listed in the spreadsheet, some of the charges appear to have been assessed during the period from December 1, 2015, through May 3, 2017, when *Moya I* was binding law. Excluding those charges, the spreadsheet still lists more than one hundred allegedly unlawful charges assessed *after* May 3, 2017 and many more than that *before* December 1, 2015. Thus, even if the charges assessed during the time *Moya I* was in effect are disregarded, the circuit court's factual finding that the class potentially numbers in the hundreds is not clearly erroneous. *See **Royster-Clark, Inc. v. Olsen's Mill, Inc.***, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530 (findings of fact are reviewed for clear error, which means they will be upheld "as long as the evidence would permit a reasonable person to make the same finding") (citation omitted). Nor would exclusion of the *Moya I* individuals provide a reason to second-guess the court's legal conclusion that Fotusky established numerosity. *See **Harwood***, 388 Wis. 2d 546, ¶55 (determining that forty-two class members in an action satisfied numerosity requirement).

¶41 Because the circuit court's error does not require a complete reassessment of whether Fotusky "has established class certification is appropriate under WIS. STAT. § 803.08(1) and (2)," Majority, ¶33, we should go on to consider the specific challenges ProHealth raises to the certification order. None shows that the court erroneously exercised its discretion as it pertains to the remaining proposed class members.

¶42 First, ProHealth contends that Fotusky did not establish numerosity because he did not identify how many persons fit within an exclusion in the certification order for individuals who obtained a recovery in two other health record fee cases, *Moya v. HealthPort Technologies LLC*, Milwaukee County Circuit Court case No. 2013CV2642, and *Rave v. Ciox Health LLC*, No. 18-CV-305 (E.D. Wis. dismissed June 22, 2020). This argument does not establish an erroneous exercise of discretion. "[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014); 1 WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 3.13 (6th ed. 2022) ("[I]t is well settled that a plaintiff need not allege the exact number or specific identity of proposed class members."). As explained above, the circuit court did not erroneously exercise its discretion in determining that the evidence submitted by Fotusky, even excluding the *Moya I* individuals, meets the standard for numerosity. While ProHealth speculates that some individuals may be excluded due to recovery in the prior litigation, it did not submit any evidence to support its suggestion. After discovery, if one or more exclusions ultimately winnow the class (or any subclasses) down to a few individuals, ProHealth can move for decertification. *See Reilly v. Century Fence Co.*, No. 18-CV-315, 2020 WL 1166708, at *8 (W.D. Wis. Mar. 11, 2020).

¶43 ProHealth also argues that Fotusky did not establish the prerequisites of commonality, typicality, and adequacy, *see* WIS. STAT. § 803.08(1)(b)-(d), and did not establish that issues common to the class predominate over member-specific issues, *see* § 803.08(2)(c), because ProHealth can be liable for a violation of WIS. STAT. § 146.83(3f)(b)4.-5. only if it violated the statute "negligently" or "in a manner that is knowing and willful," and the evidence relevant to that issue will be

4

different for pre-*Moya I* individuals than for post-*Moya II* individuals.[3]  *See* WIS. STAT. § 146.84 (1)(b)-(bm).  But as the Majority's discussion itself makes clear, in both *Harwood* and *Hammetter* we affirmed certification of classes based on the *same claims* Fotusky raises here, alleged violations of § 146.83(3f)(b)4.-5. Majority, ¶¶19-21.  In *Hammetter*, 399 Wis. 2d 211, ¶¶12-13, 19-20, we specifically rejected challenges to class certification like those set forth by ProHealth.  Namely, we rejected a challenge that the class lacked commonality and that the named plaintiffs' claims were not typical of the class because the evidence of the defendants' state of mind might be different in the pre-*Moya I* and post-*Moya II* time periods.  *Hammetter*, 399 Wis. 2d 211, ¶¶12-13, 19-20.

¶44     ProHealth's arguments do not distinguish the present case from *Hammetter*.  As to the issue of commonality, ProHealth seizes on our conclusion in *Hammetter* that the defendants had not presented evidence of "a different mental state dependent on when the records were requested[.]" *Id.*, ¶13.  ProHealth argues that, unlike the defendants in *Hammetter*, it did present evidence to the circuit court that its "state of mind changed during the class period," as to the pre-*Moya I* and post-*Moya II* requests.  Even if discovery bears this out, however, it does not undermine the circuit court's finding that the claims of the class members raise a common question—whether ProHealth lawfully charged retrieval and certification fees.  And, as we also noted in *Hammetter*, to the extent differences arise in the evidence relevant to ProHealth's state of mind during litigation of the merits, the establishment of two subclasses as the matter progresses could address this concern. *See Hammetter*, 399 Wis. 2d 211, ¶20 (citing WIS. STAT. § 803.08(7)).

---

[3] As the Majority notes, the evidence before the circuit court does not indicate that ProHealth charged Fotusky or anyone authorized by him before our decision in *Moya I.* Majority, ¶34.

5

¶45    As to the issues of typicality and adequacy, we noted in *Hammetter*, 399 Wis. 2d 211, ¶¶18-20, that the named plaintiffs' claims were typical of those in the class because they arose from the same "practice or course of conduct," are grounded in the same legal theories, and have the same "essential characteristics." The same is true with Fotusky's claims here.

¶46    As to the issue of predominance, we explained in *Hammetter* that "[t]he guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Id.*, ¶23 (quoting *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018)). Here, the circuit court found that Fotusky's and the proposed class member's claims shared a "common legal and factual issue, that is whether [they] were charged illegal fees and the level of Pro[H]ealth's culpability in collecting illegal charges for medical records." That different evidence might ultimately prove relevant to the level of culpability does not mean that the common issues identified by the court are not predominant.

¶47    ProHealth also challenges the class definition because it does not limit the class to individuals who actually paid the fees. This is not a sufficient reason to disturb the circuit court's decision. As we explained in *Hammetter*, 399 Wis. 2d 211, ¶15, if an individual or his or her authorized representative is ultimately found not to have paid any improper charge, that individual would not have a valid claim. But that does not compel a conclusion that the class is overbroad. "How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). The salient difference is between individuals "who are ultimately shown to have suffered no harm," and those, like the *Moya I* individuals, who "could not have been harmed by the defendant's allegedly unlawful conduct." *Messner*, 669 F.3d at 824. Only

if the class definition includes persons in the latter category is it "defined too broadly to permit certification." *Id.*

¶48     Lastly, ProHealth argues that the circuit court failed to address the unjust enrichment claim in the certification order and that the claim is not amenable to class treatment. As to the first point, I disagree with ProHealth's reading of the order, which states that "[t]he claims and issues to be addressed are the claims set forth in the Plaintiff's complaint as it pertains to ProHealth." Fotusky's complaint asserts claims for violation of WIS. STAT. § 146.83 and unjust enrichment against ProHealth. Although the circuit court did not specifically address the unjust enrichment claim in its findings, the claim is premised on the same allegedly unlawful charges that underlie the statutory claim. Thus, the order certifies a class as to both claims.

¶49     As to the second point, ProHealth again relies on evidence it contends shows a different state of mind in charging individuals pre-*Moya I* and post-*Moya II*. But as we said in *Hammetter*, 399 Wis. 2d 211, ¶34, in rejecting precisely this same argument as it pertains to the unjust enrichment claim, this argument "puts the cart before the horse." If that difference persists during discovery, the circuit court has the tools necessary to address it at a later stage of the proceedings.