CENTRAL PRAIRIE FINANCIAL LLC,
Plaintiff-Respondent,

v.

Doa YANG, Defendant-Appellant.

Court of Appeals

*No. 2012AP2400. Submitted on briefs April 24, 2013.
—Decided May 29, 2013.*

2013 WI App 82

(Also reported in 833 N.W.2d 866.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Doa Yang*, pro se.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jillian N. Walker* of *Messerli & Kramer P.A.* of Plymouth, Minnesota.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. BROWN, C.J. In this case, Doa Yang appeals from a summary judgment granted in favor of Central Prairie Financial LLC, the company that owns Yang's indebtedness on a credit card account formerly owned by Chase Bank USA, N.A. Yang argues that Central Prairie failed to establish a prima facie case that Yang is responsible for the debt, despite Central Prairie's submission of affidavits and documentation establishing the existence of Yang's credit card account, Yang's default, the amount owed at the time of default, and the debt's sale and assignment from Chase to Central Prairie.[1] Yang claims that the facts here are controlled by *Palisades Collection LLC v. Kalal*, 2010 WI App 38, 324 Wis. 2d 180, 781 N.W.2d 503. But, as we will discuss, the affidavits supporting summary judgment here are far more detailed with respect to personal knowledge than in *Palisades*. Because Yang identifies no genuine dispute of material fact and Central Prairie was entitled to judgment as a matter of law, we affirm.

*Background*

¶ 2. In February 2012, Central Prairie sued Yang to recover Yang's debt for purchases made with his Chase credit card plus accrued interest. In response, Yang answered that he was "without knowledge or

---

[1] The documents establish that Yang's defaulted account was first purchased from Chase Bank by Global Acceptance Credit Company, LP and then purchased from Global Acceptance Credit Company by Central Prairie.

information sufficient to form a belief as to the truth" of the material allegations and counterclaimed regarding alleged violations of Wɪs. Sᴛᴀᴛ. §§ 422.409(2) (describing notice of assignment necessary for debtor's obligations to transfer to assignee) and 422.411(1) (2011–12)[2] (discussing rules concerning when a creditor may claim attorney fees). Central Prairie filed a motion for summary judgment along with numerous exhibits including the following:

1. An affidavit from the custodian of Central Prairie's records that Central Prairie's business practices included purchasing defaulted credit card accounts from Chase Bank, that in such purchases Central Prairie obtains and integrates Chase's electronic records of those accounts into Central Prairie's own business records, and that review of those regularly kept records reflected that Yang was issued a credit card by Chase, failed to make payments and therefore defaulted on the terms of the Cardmember Agreement, and that Central Prairie thereafter acquired "all right and title" in Yang's account.

2. "True and correct copies" of Yang's Cardmember Agreement, Yang's monthly billing statements, the Bill of Sale and other documents substantiating the purchase and sale of Yang's defaulted account and its assignment from Chase to Central Prairie, as well as an affidavit establishing the transfer of the electronic records of Yang's account from Chase Bank to Central Prairie.

¶ 3. In response, Yang's attorney submitted an affidavit asserting various legal conclusions, including that the record custodian's affidavit "does not [establish the witness's] requisite personal knowledge under [Wɪs.

---

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

STAT. §] 908.03(6)" and that under *Palisades*, 2010 WI App 38, ¶ 22, the custodian "does not provide any knowledge as to how original creditor, Chase Bank USA, N.A. creates these original [billing] statements." Central Prairie replied that "unlike the plaintiff in *Palisades*, Plaintiff has produced affidavits executed by each of its predecessors in interest, going back to the original creditor." Central Prairie also argued that "records relating to Defendant's Account were transmitted by a person [with] personal knowledge in the regular course of a regularly conducted activity, a sale of a debt," and thus were admissible evidence under § 908.03(6). Furthermore, Central Prairie asserted, the computer-generated statements "are not hearsay and are admissible under . . . § 908.03(6)."

¶ 4. After a hearing, the circuit court granted Central Prairie's motion and issued an order for summary judgment and judgment in favor of Central Prairie. Yang appeals.[3]

## Discussion

██ ██

¶ 5. In reviewing a circuit court decision granting summary judgment, this court applies the same standards as the circuit court, under WIS. STAT. § 802.08. *Board of Regents v. Mussallem*, 94 Wis. 2d 657, 674, 289

---

[3] Central Prairie in its brief asserts that the circuit court subsequently entered an order dismissing Yang's counterclaims as well, and Central Prairie interprets Yang's appeal as including this dismissal. The record on appeal includes no documentation of any such order, however, and Yang's notice of appeal references only the court's October 12, 2012 order granting summary judgment and judgment, which makes no mention of Yang's counterclaims. Furthermore, on appeal Yang has made no argument reasserting any of the counterclaims he pleaded.

N.W.2d 801 (1980). When the moving party's supporting affidavits and exhibits establish a prima facie case that it is entitled to judgment, and the defendant fails to establish any dispute of fact, then summary judgment will be granted. *Id.*

¶ 6. Central Prairie sued Yang "to enforce a cause of action arising from a consumer credit transaction," alleging that Yang owed Central Prairie for money that he charged for goods and services, plus interest, using the credit card account that Chase subsequently assigned to Central Prairie. While the complaint refers to Yang's underlying "consumer credit transaction" with Chase Bank, it also notes correctly that in Wisconsin the assignee of a consumer debt is not a "creditor" under Wisconsin's consumer credit statutes, provided that the assignee does not regularly lend money directly to consumers. *Rsidue, L.L.C. v. Michaud*, 2006 WI App 164, ¶ 14, 295 Wis. 2d 585, 721 N.W.2d 718. Hence, the special pleading requirements of Wis. Stat. § 425.109(1) do not apply here.

¶ 7. Instead, this is an ordinary action to collect money owed under a contract. Where a valid contract exists, we enforce the parties' intent as set forth in the contract terms. *Riegleman v. Krieg*, 2004 WI App 85, ¶ 20, 271 Wis. 2d 798, 679 N.W.2d 857. Our examination of the record shows that Central Prairie has submitted evidence of an unambiguous contract between Chase and Yang establishing Yang's credit card account and the valid assignment of Chase's contract rights to Central Prairie. First, Central Prairie has produced the Cardmember Agreement to which, according to Central Prairie's record custodian's sworn statement and the statement from Chase's own record

custodian referenced in that statement, Yang agreed to be bound when he obtained a credit card from Chase. That agreement includes provisions stating that Yang "agree[s] to pay [Chase] amounts [he] owe[s]," and that Yang will "be in default" if, among other things, he fails to pay "at least the minimum amount due by the date and time due as shown on your billing statement." The agreement also expressly states that Chase "may assign [the] account, any amounts [owed to Chase], or any of [Chase's] rights and obligations under this agreement to a third party," which will make that third party entitled to enforce the assigned rights.

¶ 8. In addition to this contract and the billing statements for the associated account, Central Prairie also documented the transactions through which a set of defaulted accounts including Yang's account was sold and assigned to Central Prairie. Central Prairie furthermore submitted proof that it sent Yang a notice validating its status as the current assignee of Yang's indebtedness to Chase.

¶ 9. Yang has submitted no evidence of any defense to his obligation to pay this debt. Instead, his argument is that Central Prairie's submissions are insufficient to make a prima facie case under *Palisades*. But Yang's reliance on *Palisades* is unavailing. *Palisades* stands for the extremely narrow proposition that the hearsay exception for business records is not established when the only affiant concerning the records in question lacks personal knowledge of how the records were made. *See Palisades*, 324 Wis. 2d 180, ¶ 22. In *Palisades*, the only affidavit submitted by the assignee "present[ed] no facts that show that [the affiant] ha[d] personal knowledge of how the account statements were prepared and whether they were prepared in the ordinary course of [the original creditor's] business" and

offered no basis from which to infer that the affiant had "personal knowledge of how [the original creditor] prepared the accounts." *Id.*, ¶ 23. Specifically, the affidavit was from an agent of the plaintiff itself, who had no personal knowledge of the original creditor's record-keeping practices. *See id.*, ¶¶ 4–5.

¶ 10. Here, in stark contrast, Central Prairie has produced documentation to validate the existence and amount of the indebtedness under a contract with the original creditor, Chase, and the transactions by which that indebtedness (and records of it) was assigned to Central Prairie. First, the affidavit of Central Prairie's own record custodian confirms his personal knowledge of Central Prairie's regular practice of purchasing defaulted Chase accounts and receiving transmission of "electronic account information at the time the accounts are assigned," along with the terms and conditions and account statements, which records are regularly "integrated . . . from Chase Bank USA, N.A. into [Central Prairie's] own business records." This aspect alone, the custodian's explanation of the regular processes by which Chase's electronic account records are transmitted to its assignees, already differentiates this case from *Palisades*, where the affiant had no apparent knowledge of how Chase prepared its accounts.

¶ 11. The same affiant further confirms that "based on his review of those records," Yang was issued a Chase credit card account, agreed to be bound by the Cardmember Agreement, and incurred charges as reflected in the monthly billing statements; "true and correct" copies of the Cardmember Agreement and billing statements are attached. The same affiant also swore that the documentation of the Bill of Sale of the account from Chase to Global Acceptance and the subsequent assignment from Global Acceptance to Cen-

tral Prairie were a "true and correct" copy of the documentation of those events held in Central Prairie's records.

¶ 12. That documentation of the Bill of Sale, moreover, includes a statement from Chase's authorized representative that Chase's own records "made at or near the time" of the material events and "kept in the ordinary course" of Chase's business reflect the existence of Yang's account and the amount of his indebtedness, as well as the affidavit of the records custodian for the intermediary assignee, Global Acceptance, stating that the records of Yang's account reflect the account data furnished by Chase to Global Acceptance at the time of that assignment.

¶ 13. The hearsay exception for business records applies to the records of Yang's indebtedness and its assignment.[4] That exception applies to any

> memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness.

Wɪs. Sᴛᴀᴛ. § 908.03(6). The key documents here—the Cardmember Agreement, billing statements, and documentation of the sale and assignment of Yang's account —fall under this exception, because affidavits establish the affiants' personal knowledge that those documents

---

[4] Because we conclude that the records were admissible evidence under Wɪs. Sᴛᴀᴛ. § 908.03(6), we do not address Central Prairie's alternative theory that they were admissible because they were made by a computer

record events that occurred at the times recorded, in the course of regularly conducted business activity. As Central Prairie pointed out in its summary judgment argument:

> The routine of modern affairs, mercantile, financial and industrial, is conducted with so extreme a division of labor that the transactions cannot be proved at first hand without the concurrence of persons, each of whom can contribute no more than a slight part, and that part not dependent on his memory of the event. Records, and records alone, are their adequate repository, and are in practice accepted as accurate upon the faith of the routine itself, and of the self-consistency of their contents. Unless they can be used in court without the task of calling those who at all stages had a part in the transactions recorded, nobody need ever pay a debt, if only his creditor does a large enough business.

*Palmer v. Hoffman*, 318 U.S. 109, 112 n.2 (1943) (citation omitted).

¶ 14. In short, this is not a *Palisades* case. As Yang presented no evidence rebutting the prima facie case that Central Prairie is the assignee of his indebtedness to Chase, summary judgment was proper. We affirm.

*By the Court.*—Judgment affirmed.