# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 17, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1044**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV192

IN COURT OF APPEALS
DISTRICT IV

---

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4,

PLAINTIFF-APPELLANT,

V.

HEATHER R. SELDAL,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Reversed and cause remanded*.

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

¶1    GRAHAM, J.    National Collegiate Student Loan Trust 2007-4 ("the Trust") appeals a circuit court order certifying a class of Wisconsin residents[1] with claims for declaratory relief under WIS. STAT. § 806.04 and claims based on violations of the Wisconsin Consumer Act, WIS. STAT. § 427.101 et seq.    The Trust contends that the court's order does not comport with WIS. STAT. § 803.08(11)(a), which requires a decision on class certification to set forth all reasoning and all evidence relied upon in support of the decision.    The Trust also argues that it is entitled to an order denying class certification on the ground that the class representative, Heather Seldal, has not proven the statutory prerequisites for class certification.

¶2    We conclude that the circuit court's class certification order does not comport with WIS. STAT. § 803.08(11)(a) because the court did not provide reasoning and analysis or point to evidence in the record to support its findings regarding at least some of § 803.08's prerequisites for certification.    However, we reject the Trust's argument that it is entitled to an order denying class certification as a matter of law.    As a result, we reverse the class certification order and remand to the circuit court for further proceedings consistent with this opinion.

## BACKGROUND

¶3    This class action lawsuit arose as a response to an action that the Trust commenced against Seldal to collect on a student loan that she took out from

---

[1] WISCONSIN STAT. § 803.08 (2021-22) specifically addresses procedural requirements for class actions filed in Wisconsin, and § 803.08(11)(b) provides that the court of appeals "shall hear an appeal of an order granting or denying class action certification" provided that "a notice of appeal is filed within 14 days after entry of the order."

All references to the Wisconsin Statutes are to the 2021-22 version.

PNC Bank. The focus of Seldal's class action is her allegation that the Trust has been unlawfully attempting to collect payments from a class of borrowers whose loans originated with multiple national banks including PNC.

¶4      The following facts pertain to Seldal's loan, and are undisputed unless otherwise noted. In 2007, Seldal applied for an educational loan from PNC via a form credit agreement. PNC disbursed a $5,500 check, which Seldal endorsed and deposited.

¶5      The parties dispute what happened to the ownership and right to collect on Seldal's loan. The Trust alleges that shortly after disbursement, Seldal's loan, along with the educational loans of hundreds of other borrowers, were "sold, assigned, and transferred" to the Trust through a "two-step" student loan securitization transaction allegedly arranged by First Marblehead Corporation. Seldal disputes that the loans were assigned to the Trust, and she further alleges that, even if they were, the Trust cannot prove that fact with admissible evidence.

¶6      According to the Trust, Seldal's loan was serviced by American Education Services ("AES").[2] It is undisputed that in 2009, Seldal filed for bankruptcy and identified "AES/nct" as the creditor of her student loan. She later requested and received forbearances on the loan from AES. Then, between 2012 and 2016, Seldal submitted loan payments to AES.

¶7      The last payment that Seldal made on the loan was on October 31, 2016. After Seldal ceased making payments, servicing was purportedly

---

[2] AES is sometimes referred to as PHEAA, but we do not use that acronym in this opinion.

transferred from AES to Transworld Systems, Inc. ("TSI"), which is the default loan servicer for the Trust. According to the Trust, TSI then became the custodian of the records for Seldal's loan and had "real-time access to AES'[s] system of record."

¶8 After TSI exhausted its efforts to collect on the loan, the Trust commenced this action against Seldal. In her answer, Seldal alleged that the Trust could not prove that it had been assigned her loan because it lacked evidence of the chain of title, or because any evidence it had to prove the assignment was inadmissible.

¶9 Seldal then counterclaimed against the Trust on behalf of a putative consumer class.[3] She alleged that the Trust had violated WIS. STAT. § 427.101 et seq. by attempting to collect, or actually collecting, on loans taken out by Seldal and the other putative class members, knowing that it did not have the legal right to do so. Seldal also sought a declaration under WIS. STAT. § 806.04 that the Trust "lacks the right to enforce or to collect the debts they allege they own from Seldal and the Consumer Class and Subclasses."[4]

¶10 The Trust moved for summary judgment on its claims against Seldal, asserting that there was no genuine dispute of material fact that it had been assigned her loan. Some of the arguments and evidence presented in the summary judgment briefing are pertinent to the parties' arguments about class certification;

---

[3] Because this lawsuit originated with the Trust's collection action, the circuit court filings designate Seldal as a "counter-plaintiff" and the Trust as a "counter-defendant."

[4] Seldal also included a counterclaim under WIS. STAT. § 100.18 (the Wisconsin Deceptive Trade Practices Act), which the circuit court dismissed on summary judgment. Seldal has not sought leave to appeal the dismissal of this claim, and we discuss it no further.

therefore, although we are not reviewing the circuit court's summary judgment decisions in this appeal, we summarize aspects of those proceedings that may be relevant to the class certification decision.

¶11 The Trust asserts that it is one of several statutory trusts that were formed between 2004 and 2007 for the purpose of offering securities that are backed by student loan assets.[5] It further contends that it acquired multiple pools of private student loans, including a pool containing Seldal's loan, in a single transaction that took place on September 20, 2007. According to the Trust, that transaction, which it describes as a "two-step sale," proceeded as follows.

¶12 In the first step of the transaction, First Marblehead Corporation arranged for more than a dozen national banks including PNC to assign pools of private student loans to an intermediate depositor called National Collegiate Funding ("Funding"). All of these loans had been originated and guaranteed by The Educational Resource Institute ("TERI"), and they were assigned to Funding through eighteen separate contracts referred to as "pool supplement" agreements.

¶13 The individual loans that the banks purportedly assigned to Funding were not specifically identified in the text of the pool supplement agreements. Instead, each pool supplement agreement referred to a pool of loans that was being assigned, and the individual loans in each pool were identified in documents designated as "schedules" to each pool supplement agreement. According to the

---

[5] At the time Seldal moved to certify a class of consumers, she also moved to certify a class of defendants consisting of the Trust and all of the other national collegiate student loan trusts that were formed between 2004 and 2007 for the purpose of offering asset-backed securities comprised of educational loans. The circuit court denied the motion to certify a class of defendants, and Seldal has not appealed that decision.

Trust, PNC assigned Seldal's loan to Funding via an agreement we refer to as the "PNC Pool Supplement Agreement," and Seldal's loan is specifically identified on "Schedule 1" of the PNC Pool Supplement Agreement.

¶14    In the second step of the transaction, Funding assigned the eighteen different pools of loans to the Trust pursuant to a "Deposit and Sale Agreement." Attached to that agreement were schedules identifying the pools of loans that Funding sold to the Trust. According to the Trust, Schedule A to the Deposit and Sale Agreement identifies the pool of PNC loans that includes Seldal's loan.[6]

¶15    The Trust's summary judgment materials made the following representations about the origination and servicing of Seldal's loan. TERI had processed Seldal's loan at its origination on PNC's behalf, and it also processed all of the other loans that the Trust obtained in the two-step sale described above. Following disbursement, TERI sent the origination records for Seldal's loan to the Trust's loan servicer, AES. AES had been appointed a custodian of Seldal's loan documents, and it serviced her loan until it was charged off in June 2017. Following Seldal's default, the servicing of the account was transferred to TSI, which is the post-default servicer for the Trust. Pursuant to a default servicing agreement, TSI became the record custodian for the Trust with respect to the accounts TSI services, including Seldal's, and it may refer loans to law firms for collection actions on behalf of the Trust.

---

[6] Seldal disputed this allegation during the summary judgment proceedings. She asserted that the type of loan she had taken out from PNC is not described in the PNC Pool Supplement Agreement or Schedule A to the Deposit and Sale Agreement.

¶16     To support its summary judgment motion, the Trust submitted the affidavit of Bradley Luke, who averred that he was "the Director of Operations and a records custodian at [TSI]."  Luke averred that Seldal's loan and the other loans that were part of the PNC pool were assigned from PNC to Funding through the PNC Pool Supplement Agreement.  Luke further averred that Funding assigned all rights, titles, and interests in Seldal's loan to the Trust through the Deposit and Sale Agreement.  Luke attached a purported copy of the PNC Pool Supplement Agreement to his affidavit.  He also attached a purported "excerpt" of Schedule 1 of the PNC Pool Supplement Agreement, which allegedly showed that Seldal's loan was identified in Schedule 1.  Finally, he attached a purported copy of the Deposit and Sale Agreement and a copy of its Schedule A, which, as noted above, purportedly identified the pool of PNC loans that allegedly included Seldal's loan.

¶17     Seldal opposed the Trust's motion.  She argued that Luke's affidavit and attached exhibits were not admissible as evidence.[7]  In the alternative, Seldal

---

[7] Seldal advanced a number of arguments regarding the admissibility of Luke's affidavit and its attached exhibits.  We do not resolve these issues in this appeal, and note them here only because they are related to the parties' arguments regarding class certification.

First, Seldal asserted that Luke lacked personal knowledge of his averments, as required by WIS. STAT. § 802.08(3).  Seldal argued that Luke could not have had personal knowledge of the PNC Pool Supplement Agreement, its Schedule 1, or the Deposit and Sale Agreement because he first began working for TSI's predecessor in 2010, after the transaction occurred.  Therefore, she argued, the copy of the PNC Pool Supplement Agreement, the "excerpt" of Schedule 1, and the copy of the Deposit and Sale Agreement were all inadmissible hearsay.  Second, she argued that the exhibits to Luke's affidavit were not admissible under the hearsay exception for records of a regularly conducted activity, see WIS. STAT. § 908.03(6), because they were created and maintained by entities other than TSI and Luke lacked personal knowledge of how the records were made, whether they were made at or near the time of the event recorded by a person with personal knowledge, and whether the records were prepared in the course of those other entities' regularly conducted activities.  Third, she challenged the authenticity of several of the exhibits.  Finally, Seldal asserted that the Trust could not rely on Luke's testimony to show the contents of
(continued)

7

argued that the Trust's evidence, even if admissible, failed to prove that her loan was assigned to the Trust.[8]

¶18    The circuit court held a hearing on the Trust's motion for summary judgment on its claims against Seldal.  During the hearing, the court struck at least some portions of Luke's affidavit, including the exhibits that were attached to the affidavit.  According to the court, at least some aspects of Luke's affidavit constituted inadmissible hearsay that failed to satisfy the hearsay exception for records of a regularly conducted activity under WIS. STAT. § 908.03(5).  Having determined that the Trust failed to satisfy its burden of proof, the court denied its motion for summary judgment on its claims against Seldal.[9]

---

Schedule 1 to the PNC Pool Supplement Agreement under WIS. STAT. § 910.02, which, with certain exceptions, requires an "original" to prove the content of a writing.

[8] Again, we do not resolve these issues here and note them only because they are pertinent to the arguments about class certification.  Seldal argued that the fact that the Trust possessed her credit agreement with PNC did not prove that her loan had been assigned to the Trust.  She argued that, in order to prove its status as an assignee, the Trust had to present evidence showing that it had been assigned her specific loan, and that it was not enough to present agreements such as the PNC Pool Supplement Agreement or the Deposit and Sale Agreement that showed it had been assigned pools of unidentified loans.  Finally, Seldal argued that the Trust had not and could not produce an authenticated and admissible copy of Schedule 1.  She disputed the authenticity of the "excerpt" of Schedule 1 that was attached to Luke's affidavit and purportedly showed that her loan was assigned as a part of the PNC Pool Supplement Agreement, and she argued that, without Schedule 1, the Trust could not prove that it had been assigned the right to collect on her loan.

[9] Although we are not reviewing the circuit court's summary judgment decisions, we make the following observations because they may be helpful to the proceedings following remand.

We observe that during the circuit court proceedings the discussion of the hearsay rules by the court and parties may not fully account for a distinction that the case law appears to recognize between assignment documents, which can take the form of contracts between assignor and assignee, and loan servicing records, which are often used to document activities including communications and payments and may be admissible as records of regularly conducted activities. *See **Dow Fam., LLC v. PHH Mortg. Corp.**,* 2013 WI App 114, ¶19, 350 Wis. 2d 411, 838 N.W.2d 119 (concluding that a copy of a note was not hearsay because it was not being

(continued)

¶19    Following this decision, the Trust moved for summary judgment on Seldal's counterclaims. It argued that Seldal's counterclaims fail as a matter of law because they hinge on an allegation that the Trust knew or should have known that it would be unable to prove that it had the right to collect on Seldal's loan. According to the Trust, the evidence it submitted regarding the purported assignment of Seldal's loan "clearly demonstrate[d]" that, at the very least, at the time the Trust attempted to collect on Seldal's loan, it believed that it had been assigned the loan and would be able to prove that status.

¶20    As an initial matter, the Trust argued that, for purposes of defending against Seldal's counterclaims, the evidence it submitted was not hearsay because it was being presented to show that the Trust had reason to believe that it owned Seldal's loan, and not for the truth of the matters asserted. The Trust also submitted a revised affidavit from Luke with the PNC Pool Supplement Agreement, a purported copy of Schedule 1, and the Deposit and Sale Agreement attached as exhibits. Luke averred that TSI's predecessor had received the PNC Pool Supplement Agreement's Schedule 1 in a digital Excel file format on November 14, 2012, that the Excel file had been stored on servers controlled by TSI's predecessor and then TSI, and that the Excel file had not been modified at any time since its receipt. According to Luke, Exhibit D to his affidavit was a

offered to prove the truth of the matters asserted but instead as evidence of a legal act); ***Bank of America NA v. Neis***, 2013 WI App 89, ¶49, 349 Wis. 2d 461, 835 N.W.2d 527 (holding that "contracts, including promissory notes, are not hearsay when they are offered only for their legal effect, not 'to prove the truth of the matter asserted'" (citation omitted)); *cf.* ***Central Prairie Financial LLC v. Yang***, 2013 WI App 82, ¶13, 348 Wis. 2d 583, 833 N.W.2d 866 (considering whether documents including a bill of sale that substantiated the assignment of an account were admissible under the hearsay exception for records of regularly conducted activities).

We also observe that some of the parties' arguments may conflate issues of authenticity and the foundational requirements for the hearsay exception in WIS. STAT. § 908.03(6).

copy of the Excel file that constituted Schedule 1, which had been converted into a PDF format and redacted.

¶21    The Trust also argued that it had presented additional proof in the form of affidavits from employees of other entities involved in the alleged assignment of Seldal's loan to the Trust.   It argued that these affidavits authenticate the PNC Pool Supplement Agreement, its Schedule 1, the Deposit and Sale Agreement, and its Schedule A, and that the affidavits also confirm that Seldal's loan was included in the chain of assignments from PNC to the Trust.[10]

¶22    Seldal opposed the Trust's motion for summary judgment on her counterclaims, and she also filed a motion for summary judgment on the Trust's claims against her.[11]   In her briefing, Seldal argued that the Trust had yet to provide an authenticated or admissible copy of Schedule 1, and she reasserted her argument that the Trust could not authenticate Schedule 1 or establish that it was admissible based on an exception to the hearsay rule.

---

[10]  The Trust provided the affidavit of Cindy Dehls and Dori Costello.  Dehls averred that she was the vice president for PNC Student Lending who signed the PNC Pool Supplement Agreement on PNC's behalf.  Schedule 1 was not attached to Dehls' affidavit, but she averred that she had reviewed the PNC Pool Supplement Agreement and Schedule 1 and confirmed that Seldal's loan was included in the transaction between PNC and Funding.  Costello averred that she was an employee of Wilmington Trust Company, who was an "owner trustee" for the Trust, which executed the Deposit and Sale Agreement on the Trust's behalf.  Among other things, Costello averred that Schedule A to the Deposit and Sale Agreement identifies the pool of PNC loans listed on the electronic Schedule 1 to the PNC Pool Supplement Agreement.

[11]  With respect to her motion for summary judgment on the Trust's claims, Seldal also filed a copy of a deposit and sale agreement between Funding and a different trust, the National Collegiate Student Loan Trust 2007-3.  Seldal claimed that this agreement showed that the National Collegiate Student Loan Trust 2007-3 had purportedly been assigned the same PNC pool of loans as the Trust that allegedly included Seldal's loans and was assigned to the Trust.

¶23    The circuit court held a hearing on the parties' motions. Following the hearing, the court denied the Trust's motion as to Seldal's counterclaims for declaratory relief and under the Wisconsin Consumer Act, and it also denied Seldal's motion for summary judgment on the Trust's claims against her. Neither the transcript of the hearing nor any other document memorializing the court's rationale is included in the record on appeal.

¶24    Around the same time, Seldal also filed the motion to certify a class and subclass of consumers that is the subject of this appeal. The motion explained that, if certified, the class and subclass would seek a declaration that the Trust "lacks the right to enforce or to collect the debts they allege they own from Seldal" and other class members and monetary penalties and damages for, among other things, violations of the Wisconsin Consumer Act, WIS. STAT. § 427.101 et seq. The class would comprise "[a]ny Wisconsin resident whom [the Trust] directly, or indirectly through their authorized agent(s) communicated with alleging that a debt was owed." The subclass would consist of "[a]ny member of the [general class] who paid [the Trust], directly or indirectly, any amounts in response to any communication that alleged they owed a debt."

¶25    In her certification motion, Seldal asserted that her claims for declaratory and monetary relief were the same as those of the putative class members, and that they all hinge on one common predominant question—whether the Trust could produce admissible evidence proving that it had been assigned the class members' loans. She further argued that the Trust could not produce such evidence for a reason that was common to all class members. According to Seldal, the Trust does not have employees of its own, and instead relies on servicers to collect on loans and maintain custody of its records. Seldal alleged that neither AES nor TSI could produce a copy of the schedules that had purportedly been

11

attached to the PNC Pool Supplement Agreement or the other pool supplement agreements that were purportedly assigned to the Trust through the Deposit and Sale Agreement.

¶26    The Trust opposed Seldal's motion. Among other things, it asserted that Seldal's counterclaims were inappropriate for class-wide resolution because several key determinations would require individualized inquiries in "every instance," including whether the Trust does not own the loans taken out by each consumer; whether the Trust knew or should have known as much; whether the consumer was injured as a result of the Trust's conduct; and the amount of damages that should be awarded. The Trust claimed that, for each member of the putative class, a jury would need to consider the loan's chain of title documents; testimony from third parties; and the conduct of each consumer, including whether the consumer made payments, whether the consumer disputed the debt, and whether the Trust's ownership of the loan at issue had already been adjudicated.

¶27    Following a hearing, the circuit court granted Seldal's certification motion. *See* WIS. STAT. § 803.08(3), (11) (requiring a written class certification order). In its written order, the court certified a class consisting of "any Wisconsin resident, defined by residence at an address in Wisconsin, who [the Trust] claimed owed money on an assigned loan as of January 27, 2021, the date of the commencement of this action." The court also certified a subclass consisting of "any person who meets the above three factors" and "who paid money to [the Trust] in response to any communication that alleged they owed a debt." The court identified the class claims and issues as follows: "whether the class is entitled to monetary damages under WIS. STAT. § 427.101, et seq. and/or declaratory relief under WIS. STAT. § 806.04." The court appointed Seldal as the class representative and Seldal's counsel as class counsel.

¶28     In certifying the class, the circuit court declined to address the history of the loan assignments discussed above, stating that "[t]he parties' financial histories will not be material to this decision."  It concluded that Seldal had established the elements required by WIS. STAT. § 803.08(1) and (2)(c), which include commonality and predominance.  Regarding commonality, the court determined that there was one question that was common to the class—whether the Trust "unlawfully attempt[ed] to collect on [the class members'] loans"—and that that common question could be answered "'in one stroke' by a factual inquiry into [the Trust]'s beliefs and intentions regarding the assignment of the class members' loans."  Regarding predominance, the court determined that the common issues regarding the assignment of these loans would predominate, even if, as the Trust predicts, "other documents may be necessary" to prove the class members' claims.

¶29     The Trust appeals the class certification order.  We provide additional details regarding that order as necessary below.

## DISCUSSION

¶30     The Wisconsin requirements for class certification are codified in WIS. STAT. § 803.08.  That statute has recently been revised, both by our supreme court and also by the state legislature, to harmonize Wisconsin law with federal class certification standards.  *See* S. CT. ORDER 17-03 (eff. July 1, 2018); 2017 Wis. Act 235.  The Wisconsin Supreme Court has directed us to look to federal case law applying Rule 23 of the Federal Rules of Civil Procedure when interpreting our state statute.  *See **Harwood v. Wheaton Franciscan Servs., Inc.**, 2019 WI App 53, ¶21, 388 Wis. 2d 546, 933 N.W.2d 654 (citing Judicial Council Committee Notes, 2017, § 803.08, and stating that the "intent was to craft a

Wisconsin class action rule that tracks as closely as possible federal practice so that Wisconsin courts and practitioners can look to the well-developed body of federal case law interpreting [Rule] 23 for guidance").

¶31    The substantive standards for certifying a class are found in WIS. STAT. § 803.08(1) and (2).    Subsection (1) requires the party requesting certification to establish, by a preponderance of the evidence, three facts about the proposed class and class representative (referred to as "numerosity," "commonality," and "typicality") and a fourth fact about the party's ability to represent the class (referred to as "adequacy").[12]  *See Harwood*, 388 Wis. 2d 546, ¶23 (citing § 803.08(1)); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (commonly referred to as *Dukes*); *see also Fotusky v. ProHealth Care, Inc.*, 2023 WI App 19, ¶11, 407 Wis. 2d 554, 991 N.W.2d 502 (explaining burden of proof is a preponderance of the evidence).

¶32    If the party requesting certification satisfies its burden on these four prerequisites, that party must also prove that the putative class action conforms to one of the class actions enumerated in WIS. STAT. § 803.08(2).  As relevant here, the party must prove "that the questions of law or fact common to all class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

---

[12]  Specifically, WIS. STAT. § 803.08(1) requires that:  (a) "[t]he class is so numerous that joinder of all members is impracticable"; (b) "[t]here are questions of law or fact common to the class"; (c) "[t]he claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (d) "[t]he representative parties will fairly and adequately protect the interests of the class."

14

adjudicating the controversy." *See* § 803.08(2)(c).[13] These two additional prerequisites are referred to as "predominancy" and "superiority." *Harwood*, 388 Wis. 2d 546, ¶24.

¶33 The decision to grant or deny a motion for class certification is committed to the circuit court's discretion. *Id.*, ¶¶5, 41; *Hammetter v. Verisma Sys., Inc.*, 2021 WI App 53, ¶9, 399 Wis. 2d 211, 963 N.W.2d 874. A court properly "exercises its discretion when it considers the facts of record and reasons its way to a rational, legally sound conclusion." *Shannon v. Mayo Clinic Health Sys. – Nw. Wisconsin Region, Inc.*, 2021 WI App 49, ¶12, 398 Wis. 2d 685, 963 N.W.2d 115 (citing *Harwood*, 388 Wis. 2d 546, ¶41).

¶34 In some instances, if a circuit court fails to set forth its reasoning to support a discretionary decision, an appellate court will independently review the record and search for reasons to sustain the court's exercise of discretion. *See, e.g.*, *State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983). Here, however, the circuit court's certification decision is governed by the standard set forth in WIS. STAT. § 803.08(11)(a), which requires "a written decision setting forth all reasons why the [class] action may be maintained and describing all evidence in support of its determination."[14] Whether the court's certification

---

[13] "The matters pertinent to these findings include: 1. The class members' interests in individually controlling the prosecution or defense of separate actions[;] 2. The extent and nature of any litigation concerning the controversy already begun by or against class members[;] 3. The desirability of concentrating the litigation of the claims in the particular forum[;]" and "4. The likely difficulties in managing a class action." WIS. STAT. § 803.08(2)(c).

[14] The standard in WIS. STAT. § 803.08(11)(a) was added to the statute by the legislature in 2017 Wis. Act 235, which became effective in April 2018. Although the *Harwood* court acknowledged these legislative revisions to the statute, it determined that the revisions had no bearing on its analysis of the issues in that case. *Harwood v. Wheaton Franciscan Servs., Inc.*, 2019 WI App 53, ¶4 n.4, 388 Wis. 2d 546, 933 N.W.2d 654.

decision satisfies that standard is a question of law we review de novo. **Shannon**, 398 Wis. 2d 685, ¶13. Because our review of a decision certifying a class action is governed by this legislative directive, we will not search the record for reasons to affirm the decision if we conclude that it does not comport with § 803.08(11)(a). *See id.*; *see also* **Cowan v. Cave Enters. Operations, LLC**, No. 2021P1441, unpublished slip. op. ¶¶15-18 (WI App Jan. 24, 2023) (remanding to the circuit court because the court's order failed to set forth all reasoning and all evidence in support of its certification ruling, despite a substantial evidentiary record).[15]

¶35     The Trust makes two overarching requests in this appeal. First, it asks us to reverse the certification order on the ground that the circuit court did not fully set forth its reasoning or the evidence it relied upon, and therefore the court's order does not comport with WIS. STAT. § 803.08(11)(a). Second, the Trust asks us to conclude that Seldal is not entitled to certification as a matter of law on the ground that her motion fails to satisfy the prerequisites for certification found in § 803.08(1) and (2).

¶36     As to the first request, Seldal does not meaningfully dispute that the circuit court's order lacks reasoning and evidence, but she contends that the issues are simple, the court "fully understood the claims before it" based on its prior review of the cross-motions for summary judgment, and the record evidence satisfies all prerequisites for class certification found in WIS. STAT. § 803.08. Therefore, Seldal asks us to affirm the court's exercise of discretion despite any deficiency in its written order.

---

[15] We cite this authored unpublished opinion pursuant to WIS. STAT. RULE 809.23(3) for its persuasive value.

¶37 For reasons we explain below, we conclude that the circuit court's written decision does not comport with WIS. STAT. § 803.08(11)(a). In our review of the decision, we are unable to discern the court's "rigorous analysis" in its consideration of at least some of § 803.08(1)'s prerequisites, and ultimately its reasons for certifying the class and subclass. *See* § 803.08(11)(a); ***General Tel. Co of Sw. v. Falcon***, 457 U.S. 147, 161 (1982) (requiring a rigorous analysis to support a class certification decision). The gaps in the court's analysis are most pronounced in its discussion of commonality, § 803.08(1)(b), and predominance, § 803.08(2)(c), and these gaps may affect the court's analysis of other prerequisites as well.

¶38 As noted, WIS. STAT. § 803.08(1)(b) requires "questions of law or fact common to the class" as one prerequisite for certifying a class action. However, as the United States Supreme Court observed in ***Dukes***, "[t]hat language is easy to misread, since 'any competently crafted class complaint literally raises common questions.'" ***Dukes***, 564 U.S. at 349 (citation omitted). Thus, the raising of common questions alone does not suffice, *see id.*, nor does the mere fact that all of the class members have experienced a violation of the same provision of law, *see id.* at 350. The focus of the commonality inquiry turns on whether, as a result of the common questions, there is "cause to believe that all class members' claims can be productively litigated at once." ***Harwood***, 388 Wis. 2d 546, ¶25.

¶39 For the class's claims to be productively litigated at once, they "must depend upon a common contention that is capable of class-wide resolution." *See* ***Dukes***, 564 U.S. at 350; ***Bell v. PNC Bank, Nat. Ass'n***, 800 F.3d 360, 374 (7th Cir. 2015). A common contention is capable of class-wide resolution if it can be proven or disproven with common evidence, and a determination of its truth or

falsity will resolve an issue that is central to the validity of each class member's claims. *See Harwood*, 388 Wis. 2d 546, ¶25 (citing *Dukes*, 564 U.S. at 350).

¶40 Turning to the certification decision in this case, as noted, the circuit court certified two claims for class-wide resolution: (1) a claim seeking a declaration that the Trust lacks the right to enforce or to collect the debts of each class member; and (2) a claim that the Trust violated the Wisconsin Consumer Act by, among other things, attempting to collect a debt from the class members that it knew or ought to have known it could not prove it owned. *See* WIS. STAT. § 427.104(1)(j) (providing that, when attempting to collect an alleged debt arising from a consumer credit transaction, a merchant may not "[c]laim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist").

¶41 In finding commonality, the circuit court identified one question that was common to the class claims—whether the Trust "unlawfully attempt[ed] to collect on [the class members'] loans." According to the court, "this common question may be answered 'in one stroke' by a factual inquiry into [the Trust]'s beliefs and intent regarding the class members' loans." The court summarily rejected the Trust's arguments that the class members' claims would require an individualized inquiry into each loan's specific chain of assignment, stating that it was "not persuaded that these differences between class members defeat commonality," and that "[i]t does not matter that other questions specific to individual class members will remain unanswered[.]"

¶42 We conclude that the circuit court's discussion of commonality does not comport with WIS. STAT. § 803.08(11)(a). The common question identified by the circuit court—whether the Trust unlawfully attempted to collect on the class

18

members' loans—is nothing more than a highly generalized description of a claim under the Wisconsin Consumer Act. *See* WIS. STAT. § 427.104(1)(j) (forbidding a merchant from enforcing or attempting to enforce a right that it knows or has reason to know does not exist). Yet, as discussed above, the mere fact that the class members all raise the same legal claims and must prove the same elements to prevail is not sufficient to establish commonality. *See Dukes*, 564 U.S. at 350; *Bell*, 800 F.3d at 374. Instead, the class's claims must depend upon a common contention or theory, which must be provable with common evidence and which, if proven, must resolve an issue central to the claims of all class members. *See Bell*, 800 F.3d at 374; *Harwood*, 388 Wis. 2d 546, ¶25 (citing *Dukes*, 564 U.S. at 350).

¶43 Here, the circuit court did not explain its reasons for concluding that the common question it identified could be answered "'in one stroke' by a factual inquiry into [the Trust]'s beliefs and intent." And, absent additional explanation, we have reason to question whether that common question could be answered in one stroke, at least at the level of generality that the question was posed by the court. Based on our review of the allegations and evidence in the record, it appears that Seldal is alleging that the Trust's collection efforts were unlawful for a number of reasons related to the alleged lack of assignments, or the lack of proof thereof. Some of these reasons might be capable of class-wide resolution, and others may not. The circuit court's discussion of commonality lacks the reasoning and analysis required by WIS. STAT. § 803.08(11)(a), and the certification order must be reversed on that basis.

¶44 So too regarding the related inquiry into whether the common questions "predominate over any questions affecting only individual members." *See* WIS. STAT. § 803.08(2)(c). The circuit court's discussion of predominance is

also overly generalized and inadequate, likely because the court did not zero in on specific common questions or contentions that are capable of class-wide resolution.

¶45     Wisconsin courts have observed that "[t]he guiding principle behind predominance is whether the putative class's claims arise from a common nucleus of operative facts and issues." *Hammetter*, 399 Wis. 2d 211, ¶23 (citation omitted).  Here, the circuit court's ruling did not describe any common nucleus of operative facts and issues from which it found Seldal's claims and the class's claims to arise.  Nor did the court explain why it believed the issues common to the class would predominate over individualized questions, or what evidence it relied upon to find as much.  Therefore, the court's discussion of predominance also lacks the reasoning and analysis required by WIS. STAT. § 803.08(11)(a), and this is an additional reason that the certification order must be reversed.[16]

¶46     With its second request on appeal, the Trust asks us to go one step further.  It argues that Seldal has not proven commonality and predominance for any putative class, and that we should direct the circuit court to enter an order denying class certification on that basis.  The Trust contends that the putative class's claims are inherently individualized because they are contractual in nature, that individualized inquiries would predominate over common questions, and accordingly, that there is no reason to think that a class-wide proceeding would generate common answers about the loan assignments.  Here, the class certified by the court encompasses members whose loans originated with more than a dozen

---

[16] The parties raise a number of other arguments that we decline to address because our conclusion, that the circuit court's rulings on commonality and predominance fail to satisfy WIS. STAT. § 803.08(11)(a), is dispositive.

banks, and were then pooled into eighteen different pool supplement agreements before they were assigned to the Trust through the Deposit and Sale Agreement. Therefore, the Trust argues, determining whether any specific class member's loan was assigned to it will require an individualized inquiry into the chain of assignment for that specific loan, and will not generate any answers for class members whose loans originated with a different bank and were pooled into different pool supplement agreements.

¶47 This argument by the Trust illustrates some of the nuances that should have been explored in the circuit court's certification decision. Indeed, to the extent that the court determined that the historical details of the assignments were not "material to [its] decision," the court erred as a matter of law. However, as we now explain, we are not persuaded that the Trust is entitled to an order denying certification on the ground that Seldal cannot show commonality and predominance as prerequisites to certification.

¶48 To prevail on its claims, a putative class would have to prove that the Trust has no right to collect on the class members' loans. And, to prevail on at least one of its claims under the Wisconsin Consumer Act, a putative class would also have to prove that, despite knowing or having reason to know that it did not have that right, the Trust attempted to collect on the class members' loans. *See* WIS. STAT. § 427.104(1)(j). The parties agree that the claims at issue here turn on whether the Trust lacks the right to collect on the class members' loans.[17]

---

[17] The parties dispute their respective burdens of proof on the class's claims. At times, Seldal appears to contend that it is the Trust's burden to prove it is an assignee. By contrast, the Trust argues that it is the class's burden to prove that the Trust is not the assignee, citing *Gwiazda v. LVNV Funding, LLC*, No. CV 22-00698, 2022 WL 4280478 (E.D. Pa. Sept. 15, 2022) (concluding that no reasonable jury could find for plaintiff on her Fair Debt Collection Act claims

(continued)

¶49     As noted above, the Trust may lack that right for any number of reasons.  Some of these reasons may be unique to Seldal.[18]  Other reasons may be common to some or all of the loans allegedly assigned in the PNC Pool Supplement Agreement, but not common to the entire class that the circuit court certified, which includes seventeen other loan pools originated by different banks.  Finally, some reasons identified by Seldal may be common to all of the individuals whose loans were allegedly included in any of the pools.

¶50     Seldal cannot demonstrate commonality unless she identifies a reason or reasons that are common to all members of a defined class as to why the Trust does not have the right to collect on their loans.  *See **Dukes***, 564 U.S. at 350.  To that end, Seldal must allege and point to evidence supporting the existence of some uniform flaw in the chain of assignment of all of the loans, or some uniform flaw in the Trust's maintenance or retention of documents related to all of the class members' loans.  And this uniform flaw must be capable of proof by evidence that is common to the class, rather than through individualized attacks upon the Trust's attempts to introduce evidence of the chain of assignment for each class member's loan.

---

against purported assignee because the mere fact that the purported assignee could not prove its assignee status in a prior collection lawsuit, without more, did not mean that the purported assignee had not been assigned the loan).  We need not and do not resolve this dispute in this appeal, and we note it here only because it will likely resurface during the proceedings on remand.

[18] For example, Seldal has alleged that her loan was not included in any pool of PNC loans assigned to the Trust because the type of loan that she took out is not described in the PNC Pool Supplement Agreement or Schedule A to the Deposit and Sale Agreement, and also that another deposit and sale agreement purports to assign the same pool of loans that allegedly includes her loan to a different trust.

22

¶51 Based on the record before us, we cannot conclude as a matter of law that Seldal failed to satisfy this burden. Contrary to the Trust's assertions, Seldal has arguably advanced at least some reasons that may be common to the members of a putative class as to why the Trust allegedly has no right to collect on the loans. These alleged reasons may be common to a putative class because they are allegedly rooted in the structure of the agreements comprising the two-step sale as well as the terms of servicing agreements, and they may be provable without individualized inquiries into each loan's specific chain of assignment. *See* WIS. STAT. § 803.08(1)(b). And the circuit court may conceivably be able to determine that such common questions would "predominate over any questions affecting only individual members." *See* § 803.08(2)(c). The court did not engage with these allegations or the evidence at the time it issued the decision that is the subject of this appeal, but that does not mean that Seldal's theories and evidence fail to support commonality and predominance as a matter of law.[19]

## CONCLUSION

¶52 For the reasons explained above, the circuit court's failure to provide reasoning and analysis in its discussion of commonality and predominance, and its failure to point to evidence in support of its findings, requires that we reverse its certification order, and we remand for the court to conduct additional class certification proceedings. We provide the following guidance regarding those proceedings on remand. First, the court may consider whether in its judgment it is

---

[19] On remand, the circuit court and parties may wish to consider WIS. STAT. § 803.08(6), which provides that, "when appropriate, an action may be brought or maintained as a class action with respect to particular issues." This section appears to be based on Rule 23(c)(4) of the Federal Rules of Civil Procedure, which allows a court to certify an "issue class" in which only particular issues in the underlying controversy are to be resolved collectively.

appropriate to decide Seldal's motion based on the submissions that have already been filed, taking argument from the parties on this point as it deems appropriate, or whether it is appropriate to allow or require the parties to submit additional briefing and evidence. Second, we offer no opinion on how the issues surrounding commonality and predominance should be resolved on the merits following remand, nor do we weigh in on the other prerequisites for class certification. On remand, the circuit court will be free to exercise its discretion on these issues as it sees fit, as long as any decision certifying a class complies with WIS. STAT. § 803.08(11)(a).

*By the Court.*—Order reversed and cause remanded.

Not recommended for publication in the official reports.